ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| PABLO CASELLAS TORO<br><br>RECURRENTE<br><br><br>V.<br><br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>RECURRIDO | KLRA202400693 | *REVISIÓN JUDICIAL* procedente del Departamento de Corrección y Rehabilitación; Comité de Clasificación y Tratamiento<br>_____<br>Núm.: 12,690-24 (5078)<br>_____<br>Sobre:<br><br>Reclasificación de Custodia |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Salgado Schwarz, Carlos G., Juez Ponente

## S E N T E N C I A

En San Juan, Puerto Rico, a 6 de febrero de 2025.

Comparece Pablo Casellas Toro ("Sr. Casellas" o "Recurrente") y solicita que revoquemos la determinación emitida por el Comité de Clasificación y Tratamiento ("Comité") del Departamento de Corrección y Rehabilitación ("Departamento" "Recurrido") el 30 de octubre de 2024 en la que mantiene al Recurrente bajo custodia mediana.

Por los fundamentos que exponemos a continuación, se ***confirma*** la determinación emitida por el Comité.

-I-

A continuación, exponemos los hechos pertinentes a la controversia de epígrafe. El 7 de octubre de 2024, el Comité evaluó la reclasificación del Sr. Casellas mediante el Formulario de Reclasificación de Custodia/Escala de Reclasificación de Custodia (Casos Sentenciados) ("Formulario"). El Recurrente obtuvo una puntuación de 3 en

el formulario. El 30 de octubre de 2024 el Comité emitió una *Resolución*[1] en la que recomendó que el Recurrente permanezca tiempo adicional en custodia mediana. Dicha recomendación se basó en unas determinaciones de hechos que hizo el Comité sobre la conducta del Recurrente a lo largo de su confinamiento y a la gravedad de uno de los delitos por los cuales fue sentenciado, a saber, Asesinato en segundo grado. Inconforme con dicha decisión, el 12 de noviembre de 2024, el Sr. Casellas presentó una *Reconsideración sobre Clasificación de Custodia*[2]. En síntesis, el Recurrente alega que el Comité no ha demostrado que mantenerlo en custodia mediana le beneficiaría de programas existentes. Así las cosas, el 20 de noviembre de 2024, la Oficina de Clasificación de Confinados determinó no acoger la solicitud de reconsideración. A tales efectos, señaló lo siguiente: "[…] *se concurre con la determinación del Comité de Clasificación y Tratamiento. Deberá permanecer en custodia mediana.*"[3] Posteriormente, el 17 de diciembre de 2024[4], el Recurrente presentó ante este Tribunal una *Solicitud de Revisión Judicial*[5] alegando que no existe evidencia que mantenerlo en custodia mediana es necesario para beneficiarse de tratamientos disponibles. Como parte de su solicitud, el Sr. Casellas hizo los siguientes señalamientos de error:

> **ERRÓ EL CCT AL RATIFICARLE LA CUSTODIA MEDIANA AL RECURRENTE Y NO TOMAR EN CONSIDERACIÓN EL CAMBIO DE ESTATUS LEGAL DE ÉSTE [SIC], RECLASIFICÁNDOLE EL DELITO DE 1ER GRADO A UNO DE 2DO GRADO, Y QUE LA PENA A CUMPLIR, ASÍ COMO EL AJUSTE INSTITUCIONAL EN LOS NIVELES DE CUSTODIA MÁXIMA Y MEDIANA, SON CONSIDERABLEMENTE DISTINITOS AL COMPARARSE AMBOS DELITOS.**

> **ERRÓ EL CCT AL RATIFICARLE LA CUSTODIA MEDIANA AL RECURRENTE Y NO ACREDITARLE LA**

---

[1] Véase Anejo 1 del recurso de revisión administrativa.
[2] Véase Anejo 2, págs. 1-8 del recurso de revisión administrativa.
[3] Véase Anejo 3, pág. 3 del recurso de revisión administrativa.
[4] Fechado el 5 de diciembre de 2024.
[5] Véase Apéndice del recurso de revisión administrativa.

**PUNTUACION CORRESPONDIENTE EN EL INSTRUMENTO DE ESCALA DE RECLASIFICACIÓN DE CUSTODIA, AL ÉSTE [SIC] HABER TERMINADO UN PROGRAMA DE REHABILITACIÓN AL QUE FUE REFERIDO POR EL CCT.**

El 16 de enero de 2025, el Departamento presentó su *Escrito para Mostrar Causa y Alegato en Oposición.* En lo referente a la controversia que nos ocupa, el Recurrido basó su análisis en la discreción que tiene el Departamento para considerar elementos adicionales al delito al momento de evaluar la custodia del Recurrente.

-II-

**A. Deferencia administrativa**

Los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, debido a que estas cuentan con vasta experiencia y pericia para atender los asuntos que le han sido delegados por la Asamblea Legislativa.[6] Por lo tanto, las determinaciones de las agencias suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas.[7] Sin embargo, dicha norma no es absoluta. A tales efectos, nuestro más alto foro ha enfatizado que no podemos imprimirle un sello de corrección a una determinación, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. Nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

---

[6] *Hernández Feliciano v. Municipio de Quebradillas*, 2023 TSPR 6, 211 DPR ___ (2023); *O.E.G. v. Martínez Giraud*, 2022 TSPR 93, 210 DPR ___ (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[7] *Íd.*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta [sic] cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.[8]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad.[9] Bajo este criterio, la revisión judicial se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción.[10] La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas.[11] Nuestro máximo foro ha expresado que esta intervención "*debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley.*"[12] Siendo así, aquellas determinaciones de hechos formuladas por el ente

---

[8] *Íd.*; Véase, además, *Super Asphalt v. AFI y otro*, supra, a la pág. 819.
[9] *O.E.G. v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, a la pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, a la pág. 127.
[10] *Íd.*
[11] *O.E.G. v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217.
[12] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 36.

administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[13] Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad.[14] No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra.[15] Ahora bien, nuestro más alto foro ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: (1) erró al aplicar la ley (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales.[16]

Finalmente, el Tribunal Supremo ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "*la deferencia judicial al expertise administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia.*"[17]

### B. Reclasificación de Custodia

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico[18] y el Plan de

---

[13] *Íd.*; *O.E.G. v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra.
[14] Véase Sección 4.5 de la LPAUG, 3 LPRA § 9675; *Rolón Martínez v. Supte. Policía*, supra, a la pág. 36; *Torres Rivera v. Policía de PR*, supra, a la pág. 627.
[15] *Íd.*
[16] *Torres Rivera v. Policía de PR*, supra, a las págs. 627-628; *O.E.G. v. Martínez Giraud*, supra, a la pág. 90.
[17] *O.E.G. v. Martínez Giraud*, supra, a la pág. 91.
[18] Art. VI, Sec. 19, Const. ELA [Const. PR], LPRA Tomo 1.

Reorganización del Departamento de Corrección y Rehabilitación de 2011[19] disponen que el sistema correccional propiciará la rehabilitación moral y social de las personas en confinamiento. A esos efectos, el Departamento aprobó el Reglamento 9151, titulado *Manual para la Clasificación de los Confinados* ("Reglamento") con el propósito de "*[e]stablecer un sistema organizado para ingresar, procesar y asignar los confinados a instituciones y programas de adultos*" del Departamento."[20]

Según dispone el Reglamento, "*la clasificación de los confinados consiste en la separación sistemática y evolutiva de éstos [sic] en subgrupos, en virtud de las necesidades de cada individuo, y las exigencias y necesidades de la sociedad.*"[21] Además, "*el proceso de clasificación coordina la custodia física de los confinados en los programas y recursos disponibles dentro del Sistema Correccional.*"[22] Asimismo, el sistema busca ubicar a cada confinado en el programa y nivel de custodia menos restrictivo posible del cual cualifique, sin menoscabar la seguridad y necesidades de la sociedad, de los demás confinados y del personal correccional.[23] Respecto a la custodia de un confinado, cabe señalar que dicha determinación administrativa requiere que se realice un balance de intereses adecuado entre el interés público de rehabilitar al confinado y mantener la seguridad institucional y general de la población penal y el interés particular del confinado de permanecer en un determinado nivel de custodia.[24] A tales efectos, cuando se va a determinar la procedencia de una reclasificación en el nivel

---

[19] Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado.
[20] Manual para la Clasificación de los Confinados, Reglamento Núm. 9151, Departamento de Estado, 22 de enero de 2020, pág. 2.
[21] *Íd.*, a la pág. 1.
[22] *Íd.*
[23] *Íd.*
[24] *Cruz v. Administración*, 164 DPR 341, 352 (2005).

de custodia, se deberán considerar una serie de factores subjetivos y objetivos, cuyo ejercicio requiere la pericia de la Administración de Corrección.[25]

El Reglamento reconoce cuatro (4) niveles de custodia, a saber: Máxima, Mediana, Mínima y Mínima/Comunidad.[26] La sección 7 del Reglamento regula los procedimientos de reclasificación de niveles de custodia para actualizar y revisar la evaluación inicial de custodia del confinado.[27] El Reglamento resalta la importancia de que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución.[28] Ahora bien, el Reglamento señala que *"[l]a reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada"*, pues, el objetivo es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.[29] Las reclasificaciones de custodia se llevan a cabo mediante un documento titulado Formulario de Reclasificación de Custodia/Escala de Reclasificación de Custodia (Casos Sentenciados).[30] Dicho Formulario incluye una escala de evaluación para determinar el nivel de custodia en el que se ubicará al confinado. Esta contiene criterios objetivos a considerar del cual se asignará una ponderación numérica fija. A cada criterio se le asignará una puntuación que se sumará o restará, según corresponda al historial del confinado. Entre los factores a considerar se encuentra la

---

[25] *Íd.*
[26] Manual para la Clasificación de los Confinados, supra, a las págs. 8-10.
[27] *Id.*, a la pág. 48.
[28] *Íd.*
[29] *Íd.*
[30] Manual para la Clasificación de los Confinados, *supra*; véase Apéndice K del Manual para la Clasificación de los Confinados, *supra*.

gravedad de los cargos.[31] Acumulado la puntuación, el nivel de custodia que se asignará a los casos, según la escala, es el siguiente:

| Mínima | 5 puntos o menos |
|--------|------------------|
| Mediana | 5 punto o menos si el confinado tiene una orden de detención, de arresto u orden de detención por violar la libertad bajo palabra o probatoria o si el nivel de la fianza excede los $200,000. |
| Mediana | 6-10 puntos en los renglones 1-8. |
| Máxima | 7 puntos o más en los renglones 1-3. |
| Máxima | 11 puntos o más en los renglones 1-8.[32] |

No obstante, la puntuación obtenida en esta etapa objetiva no obliga al Comité a recomendar el nivel de custodia establecido en la escala debido a que existen notificaciones discrecionales que pudieran resultar en un aumento o disminución del nivel de custodia sugerido. En lo pertinente al caso que nos ocupa, uno de los criterios que se consideró es la gravedad del delito.[33]

-III-

En el caso de epígrafe, el Recurrente alega que el Comité erró al ratificar la custodia mediana, utilizando como fundamento la modificación discrecional. Veamos.

El Sr. Casellas obtuvo una puntuación de 3 en el formulario de reclasificación. Según la escala del formulario, el Recurrente debió ser reclasificado al nivel de custodia mínima. Ahora bien, el Comité utilizó las modificaciones discrecionales y consideró la gravedad del delito para recomendar un nivel de custodia más alto. Debemos

---

[31] Véase Apéndice K del Manual para la Clasificación de los Confinados, *supra*.
[32] *Id.*, pág. 6.
[33] *Id.*, págs. 8.

señalar que la puntuación obtenida en el formulario no obliga al Comité a reclasificar al confinado según la puntuación obtenida. Lo anterior, ya que, como bien señala el formulario, su resultado es una recomendación. La determinación final le corresponde al Comité luego de evaluar una serie de factores. El Comité destacó que el Recurrente fue sentenciado por los delitos de Asesinato en 2do grado, infracciones a la Ley de Armas de Puerto Rico y Destrucción de Evidencia. Como parte de las determinaciones de hechos a lo largo de su confinamiento el Comité estableció que el Sr. Casellas arrojó positivo a cocaína mediante una prueba toxicológica. Además, el Recurrente resultó incurso en querellas por Disturbios, Agresión o su tentativa y por desobedecer una orden directa.

Finalmente, el Comité concluyó que, a pesar de que la Escala de Reclasificación arrojó una puntuación correspondiente a custodia mínima, el Recurrente debe permanecer un tiempo adicional en custodia mediana y así beneficiarse de los tratamientos ofrecidos por el Departamento. Resulta evidente que el Comité consideró, no sólo la naturaleza de los delitos por los que se encuentra recluido el Sr. Casellas, sino el historial de conducta durante su confinamiento.

A la luz de lo antes esbozado, concluimos que la determinación del Comité está fundamentada en evidencia sustancial, por lo que no amerita la intervención de esta Curia.

-IV-

Por los fundamentos antes expresados se **confirma** la determinación emitida por el Departamento a los fines de que el Sr. Casellas permanezca bajo custodia mediana.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones